**W.A. RYMAN and Cynthia M. Jones**

v.

**OFFICE AND PROFESSIONAL EM-
PLOYEES INTERNATIONAL UNION
LOCAL NO. 66 and Texaco Inc.**

**Civ. A. No. B–83–787–CA.**

United States District Court,
E.D. Texas,
Beaumont Division.

Dec. 13, 1985.

Elizabeth K. Julian, Dallas, Tex., for plaintiffs.

M. Diane Dwight, Port Arthur, Tex., Archangela M. DeSilva, James D. Garrison, Houston, Tex., for defendants.

## OPINION

COBB, District Judge.

The issue presently before this court is whether the defendants, Office and Professional Employees International Union Local No. 66 and Texaco Inc., are entitled as a matter of law to summary judgment against the plaintiffs' claims of age discrimination and breach of the duty of fair representation. Also at issue is whether the plaintiffs' claims of retaliation under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–632 (1982), should be dismissed and whether the plaintiff's demand for a jury trial should be stricken.

### I.

Prior to January 1, 1981, the plaintiffs in this case, W.A. Ryman A. age 55, and Cynthia M. Jones, age 49, were employed by defendant Texaco Inc. (hereinafter "Defendant Texaco") at its Port Arthur Package Division. Although they were represented for the purposes of collective bargaining by Defendant Office and Professional Employees International Union Local No. 66 (hereinafter "Defendant Union"), they were members of a different bargaining unit than that at defendant Texaco's Port Arthur plant. In late 1980, defendant Texaco decided to close the Port Arthur Package Division and entered into negotiations with defendant Union at both the Port Arthur Package Division and the Port Arthur Plant in order to merge the two bargaining units and avoid a layoff of Port Arthur Package Division employees, including plaintiffs. These negotiations resulted in a Merger Agreement dated March 24, 1982, which provided, *inter alia*, that employees transferred from the Port Arthur Package Division to the Port Arthur Plant would begin accumulating seniority in the Port Arthur Plant bargaining unit retroactive to January 1, 1981. Plaintiffs were transferred to the Port Arthur Plant pursuant to the provisions of this Agreement.

After the merger of the two bargaining units, the terms and conditions of employment for former Package Division employees, including plaintiffs, were governed by the provisions of the collective bargaining agreement then in effect at Port Arthur Plant. This collective bargaining agreement incorporated in its terms a seniority system which had been negotiated by defendants, more particularly described in Section II of this Opinion. The two types of seniority described in the labor agreement are described as Plant-Clerical seniority and Company-Clerical seniority. According to the terms of the Agreement, plaintiffs only began to accrue Company-Clerical and Plant-Clerical seniority in the Port Arthur Plant bargaining unit of defendant Union on January 1, 1981.[1]

The Port Arthur Plant collective bargaining agreement between defendants expired on January 7, 1982. During negotiations for a new collective bargaining agreement, defendant Texaco proposed changes to the seniority provisions. Among the proposed changes was a recommendation to eliminate certain classifications within the two groups of employees (Groups A and B) which the 1981 Collective Bargaining Agreement provided for. Because of the elimination of these classifications and their consolidation into those which remained, defendant Texaco proposed changes to the promotion and layoff provisions of the seniority system. Aside from these changes, the seniority system of the collective bargaining agreement remained

---

1. Pursuant to the provisions of the March 24, 1981, Agreement, both plaintiffs brought with them on January 1, 1981, seniority previously accrued in the Port Arthur Plant bargaining unit.

essentially the same, with the method by which an employee in the bargaining unit accrued Plant-Clerical seniority and Company-Clerical seniority remaining the same. These proposals were negotiated by defendants and were adopted in the new collective bargaining agreement that was executed on August 20, 1982.

Subsequent to the execution of this new collective bargaining agreement, and pursuant to the provisions of that agreement, over a two-year period defendant Texaco laid off a total of twenty-six employees, only three of whom were within the protected age group, pursuant to the provisions of that agreement. Plaintiff Ryman was laid off under the terms of the collective bargaining agreement on September 30, 1983; plaintiff Jones was laid off under the terms of the collective bargaining agreement on November 30, 1984. Since those layoffs, no employees have been hired by defendant Texaco in the Port Arthur plant bargaining unit represented by defendant Union, although one employee was recalled in accordance with the terms of the seniority system.

Even though the collective bargaining agreement contained a provision for filing a grievance, neither plaintiff in this case exercised his or her right to do so. Both plaintiffs, though, did file charges of discrimination against both defendants with the Equal Employment Opportunity Commission (hereinafter "EEOC"), alleging that they had been laid off because of their age. The EEOC however, found no probable cause to believe that these charges were true and issued to each plaintiff a Right to Sue letter.

Plaintiffs subsequently brought this suit against both defendants under 28 U.S.C. §§ 1331 and 1337. In their First Amended Complaint, which was filed with this court on January 12, 1984, plaintiffs alleged that defendants had negotiated a change in the seniority provisions of the collective bargaining agreement in 1981, with an intent to discriminate against them because of their age and that this change had caused their layoff and replacement by persons much younger than themselves. Plaintiffs further alleged in their First Amended Complaint that defendant Union had breached its duty of fair representation by negotiating in bad faith on behalf of plaintiffs and by failing to inform them of the change in the labor agreement prior to the ratification vote in 1982. On March 29, 1984, and April 24, 1984, defendants Union and Texaco, respectively, timely answered this complaint.

Thereafter, on April 9, 1985, defendant Texaco filed and served a Motion for Summary Judgment, which was subsequently joined in by defendant Union. In response to this Motion, plaintiffs filed and served a Memorandum in Opposition on June 5, 1985. While defendant Texaco's Motion for Summary Judgment was pending, plaintiffs also filed and served a Motion for Amended and Supplemental Complaint on June 24, 1985, seeking to amend their complaint. This court announced to the parties at a July 3, 1985, hearing on defendant Texaco's Motion for Summary Judgment that it would allow the plaintiffs to amend their complaint. At that hearing, all of the parties informed this court that the instant case was to be tried to the judge without a jury. Despite this statement to the court, however, plaintiffs filed a jury demand nine days later. Defendant Texaco, in turn, filed a Motion to Dismiss plaintiff's retaliation claims and to strike plaintiffs' jury demand on July 22, 1985. Defendant Union subsequently filed a Motion to Dismiss on September 3, 1985.

In response to defendant Texaco's Motion to Dismiss, plaintiff Jones filed another charge of discrimination with the EEOC. This charge, which was filed on July 26, 1985, alleged, *inter alia*, that defendant Texaco's failure to recall plaintiff Jones was in retaliation for her having filed her previous charge. Because of the recency of this second charge, the EEOC has not yet had an opportunity to investigate or conciliate that charge. Also in response to defendant Texaco's Motion to Dismiss, plaintiffs filed on July 29, 1985, a motion for jury trial under Fed.R.Civ.P. 39(b).

For the reasons set forth below, this court grants the defendants' Motion for Summary Judgment as to the claims of age discrimination and breach of the duty of fair representation. With regard to plaintiff Jones' claims of retaliation, the court dismisses those claims without prejudice so that the matter may be pursued further on an administrative level.

## II.

Summary Judgment is to be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Plaintiffs contend in this case that there is a factual issue as to the meaning of the 1981 Merger Agreement. Specifically, they allege that under this Agreement, they "retained" all of the Company-Clerical seniority and "lost" only the Plant-Clerical seniority that they had acquired while working at the Port Arthur Package Division. Despite the plaintiffs' contention, however, there is no genuine issue of material fact in the instant case.

█ It is axiomatic that an employee's seniority rights, if any, are derived from the applicable labor agreement. *Trailmobile Co. v. Whirls,* 331 U.S. 40, 53 n. 21, 67 S.Ct. 982, 988 n. 21, 91 L.Ed.2d 1328 (1947), *Aeronautical Indus. Dist. Lodge 727 v. Campbell,* 337 U.S. 521, 526, 69 S.Ct. 1287, 1289, 93 L.Ed. 1513 (1949). In this case, the plaintiffs' seniority rights in the Port Arthur Plant office group in 1981, if any, had to be derived from the labor agreement between defendants that was in effect at Port Arthur Plant at that time. Under that agreement, an employee had two types of seniority, Plant-Clerical seniority and Company-Clerical seniority. Plant-Clerical seniority was defined as seniority spent in a particular group within the bargaining unit. According to the 1981 labor agreement, there were two groups in the bargaining unit, namely Group A and Group B. Group A consisted of two classifications, Senior Clerk and Clerk, and Group B consisted of six other classifications, Senior Stenographer, Senior Machine Operator, Stenographer, Steno Clerk, Machine Operator, and Messenger. Under the 1981 labor agreement, an employee thus accumulated separate Plant-Clerical seniority in Group A and in Group B.[2] Art. IV, ¶ B(2) of the labor agreement.

Company-Clerical seniority, in contrast, was defined under the 1981 labor agreement as "all continuous employment in the future in any of the established classifications shown on the promotion charge." Art. IV, ¶ B(1)(b) of the labor agreement. An examination of the bargaining history at the Port Arthur Plant shows that despite the apparent meaning of the term, Company-Clerical seniority has historically meant seniority within the bargaining unit.[3] That seniority is thus dependent upon the amount of time that an employee spends within the relevant bargaining unit and is totally unrelated to an employee's years of service with the company. An employee, for example, could have twenty years of service with the company and yet have no seniority if he or she was only recently transferred to a bargaining unit where seniority is defined by a labor agreement. That is essentially what occurred in the matter at hand.

---

2. Plaintiffs do not dispute the calculation of their Plant-Clerical seniority. The only arguable issue of fact raised by plaintiffs pertains to the calculation of their Company-Clerical seniority in the Port Arthur Plant bargaining unit represented by defendant Union.

3. In 1959, Article IV of the Port Arthur Labor Agreement defined "unit seniority" as "all continuous employment in the future in any of the established clerical classifications." In 1964, Article VI of the Port Arthur Plant Labor Agreement defined "Company-Clerical seniority" as "all clerical employment heretofore previously credited and set forth as 'unit seniority' in the seniority records." In both 1981 and the present labor agreements, the term "Company-Clerical seniority" has been defined in the same manner.

As of January 1, 1981, both plaintiffs were employed at the Port Arthur Package Division, and neither had accrued Plant-Clerical or Company-Clerical seniority at the Port Arthur Plant. On March 24, 1981, the Merger Memorandum of Agreement was signed. Thereafter, on April 6, 1981, plaintiff Jones was transferred to the Port Arthur Plant as a Steno pursuant to the terms of the Merger Agreement and the labor agreement. Had there been no Merger Agreement, plaintiff Jones would have had both Company-Clerical and Group B Plant-Clerical seniority dating *only* from April 6, 1981, plus any time previously spent in a classification in the Port Arthur Plant bargaining unit. On June 1, 1981, plaintiff Ryman was transferred to the Port Arthur Plant as a Clerk pursuant to the terms of the Merger Agreement and the labor agreement. Had there been no Merger Agreement, plaintiff Ryman would have had both Company-Clerical and Group A Plant-Clerical seniority dating *only* from June 1, 1981, plus any time previously spent in a classification in the Port Arthur Plant bargaining unit.

However, the Merger Agreement altered, in some respects, the terms of the Port Arthur Plant labor agreement. Specifically, the Merger Agreement provided that former Port Arthur Package Division employees, such as plaintiffs, would accumulate "Port Arthur Plant seniority" as of January 1, 1981, regardless of the date that they were actually transferred to the Port Arthur Plant bargaining unit after the merger. Because the Merger Agreement failed to define the term "Port Arthur Plant seniority," the appropriate definition of that term must be that which is found in the labor agreement then in effect at the Port Arthur Plant. In other words, "Port Arthur Plant seniority," as that term is

used in the Merger Agreement, refers to both Plant-Clerical and Company-Clerical seniority. Thus, under the terms of the Merger Agreement, plaintiffs began to accumulate both Plant-Clerical and Company-Clerical seniority in the Port Arthur Plant bargaining unit only from January 1, 1981.[4] There is nothing in the Merger Agreement to indicate that the Company-Clerical seniority of Plaintiffs, or any of the Port Arthur Package Division employees, was to include any time that they spent at the Port Arthur Package Division.

Plaintiffs, though, point to several seniority lists which were published after the signing of the Merger Agreement that show the plaintiffs' Company-Clerical seniority as including time spent by them in the Port Arthur Package Division. Plaintiffs maintain that these seniority lists demonstrate that the parties to the Merger Agreement had intended to allow former Package Division employees to carry over the Company-Clerical seniority that they had accumulated while in the Package Division bargaining unit. The plaintiffs' reliance on these seniority lists, however, is misplaced. Seniority lists are merely a tool by which an employer and a union can keep track of an employee's seniority. These lists are not part of the labor agreement, they are not binding on the parties, and they cannot, by themselves, confer seniority upon employees. Moreover, in the event of a conflict between a seniority list and a labor agreement, the language of the labor agreement must control. Thus, this court must adhere to the seniority provisions as they are set out in both the 1981 labor agreement and the Merger Agreement and disregard any portion of those seniority lists which are inconsistent with the terms of those Agreements.

---

**4.** This interpretation of the Merger Agreement is consistent with the deposition testimony of Robert E. Collins, who drafted that Agreement and who negotiated the merger with the Port Arthur Package Division. The bargaining history as reflected in the Port Arthur Package Division Minutes also supports this interpretation.

Plaintiff Ryman's affidavit, which presents a different interpretation of the Merger Agreement, does not. raise a material fact issue, because the interpretation raised in that affidavit is based on inadmissible hearsay and is contrary to the express language of the Merger Agreement and the labor agreement.

Plaintiffs further point out that, under the 1981 labor agreement, the transfer of clerical employees to or from the Port Arthur Plant had to be "in conformance with the present policy and practice of the Company." Paragraph W of the labor agreement. As Mr. D.C. Landry, the Manager of Employee Relations at defendant Texaco's Port Arthur Plant, testified in his June 14, 1985, deposition, however, the company's policy at that time was to not give an employee credit for seniority purposes for time spent outside of the bargaining unit unless the parties to the labor agreement negotiated and entered into a separate agreement for the crediting of such seniority.[5] Landry Dep. at 35–43. In the matter at hand, the only separate agreement that was entered into by the parties to the labor agreement pertaining to seniority was the Merger Agreement, and as noted above, that Agreement did not give employees credit for time spent outside of the Port Arthur Plant bargaining unit. Rather, it simply provided that former Package Division employees were to begin accruing seniority in the Port Arthur Plant bargaining unit as of January 1, 1981. Plaintiffs' contention that they were entitled to credit for the time that they had spent in the Port Arthur Package Division is therefore contrary to both the express language of the Merger Agreement and the policy of the company at that time.

In short, no genuine issue as to any material fact has been raised in this case. Contrary to the plaintiffs' contentions, both the labor agreement and the Merger Agreement are clear as to how the plaintiffs' Company-Clerical seniority in the Port Arthur Plant bargaining unit was to be calculated. Under those agreements, plaintiffs were to begin accruing Company-Clerical seniority in that bargaining unit only as of January 1, 1981, and were not to be given credit for any time that they had spent at the Port Arthur Package Division.

### III.

■ Having determined that there is no genuine issue as to any material fact in this case, this court must now determine whether the defendants are entitled as a matter of law to summary judgment against plaintiffs' claims of age discrimination and breach of the duty of fair representation. Addressing the age discrimination claims first, plaintiffs contend that the defendants negotiated the 1982 changes in the seniority system in order to discriminate against them on the basis of their age. To establish a prima facie case of age discrimination, the United States Court of Appeals for the Fifth Circuit has held, "the plaintiff-employee must show that (1) he was a member of the protected group, (2) he was discharged, (3) he was replaced with a person outside the protected group, and (4) he was qualified to do the job." *Price v. Maryland Casualty Co.*, 561 F.2d 609, 612 (5th Cir.1977). *Accord, Carolan v. Central Freight Lines, Inc.*, 489 F.Supp. 941, 943 (E.D.Tex.1980). Because of the specific facts surrounding a claim of age discrimination where there has been a reduction in the employer's workforce, the Fifth Circuit modified the test set out in *Price* in its decision in *Williams v. General Motors Corp.*, 656 F.2d 120 (5th Cir.1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1983). In *Williams*, the court observed:

[A] plaintiff in this job reduction case could have established a prima facie case by: (1) satisfying the "standing requirements under the statute," ... *i.e.*, showing that he is within the protected age group and that he has been adversely affected—discharged or demoted—by defendant's employment decision; (2) showing that he was qualified to assume an-

---

5. Plaintiffs' reliance upon information concerning the transfer of two other former Package Division employees—Francis and Sams—as evidence of a Company policy at Port Arthur Plant permitting the crediting of seniority for time worked outside Port Arthur Plant is misplaced.

These transfers occurred *prior* to the execution of the Merger Agreement which governed Plaintiffs' seniority. Additionally, the Company and the Union agreed separately to the manner in which the seniority of Francis and Sams would be credited.

other position at the time of discharge or demotion; and (3) producing evidence, circumstantial or direct, from which a fact-finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue. *Id.* at 129 (citations and footnotes omitted).

To establish a prima facie case of age discrimination in this case, plaintiffs thus need to satisfy each prong of the three-prong test set out in *Williams*. While plaintiffs are able to satisfy the first prong of this test, they are unable to satisfy the remaining two prongs of that test. Specifically, neither plaintiff has been able to prove that he or she is qualified to assume another position within the bargaining unit. In fact, plaintiff Ryman admitted in a deposition that he could not perform either the Stenographer or Machine Operator duties. Deposition of W.A. Ryman at 29. Plaintiff Jones testified at her deposition that she had only performed the duties of Stenographer and Machine Operator and had never held the position of Clerk or Senior Clerk. Deposition of Cynthia M. Jones at 5–8, 16. Additionally, even if plaintiffs had possessed the qualification to fill some of the positions which remained after the reduction in force, defendant Texaco could not have placed plaintiffs in those positions without violating the provisions of the collective bargaining agreement between it and defendant Union.

Both the plaintiffs have likewise failed to come forward with any "additional direct, circumstantial, or statistical evidence that age was a factor in [their] termination," as required under the third prong of the *Williams* test. *See, LaGrant v. Gulf and Western Mfg. Co.,* 748 F.2d 1087, 1091 (6th Cir.1984). *See also, Williams v. General Motors Corp.,* 656 F.2d at 129. To estab-lish their prima facie case, plaintiffs needed to present evidence which would "lead the factfinder reasonably to conclude either (1) that defendant[s] consciously refused to consider retaining or relocating a plaintiff because of his [or her] age, or (2) defendant[s] regarded age as a negative factor in such consideration." *Id.* at 130. Plaintiffs failed to present any evidence which would lead this court to believe that the defendants have consciously acted to discriminate against the plaintiffs because of their age. In fact, the evidence shows the converse to be true. Of the twenty-six employees who have been laid off since the 1982 collective bargaining agreement went into effect, only three were members of the protected age group. The seniority system therefore has had a greater impact on younger, rather than older, employees. More importantly, the changes in the seniority provisions which occurred as a result of the 1982 negotiations had absolutely no effect on the plaintiffs' susceptibility to layoff. Because their Plant-Clerical and Company-Clerical seniority were equal, both plaintiffs would have been laid off regardless of the change in the seniority provisions.[6]

■ Plaintiffs, in short, have failed their burden to prove a prima facie case of age discrimination. Neither has presented any evidence to show that they were qualified to assume another position with defendant Texaco or that the change in the collective bargaining agreement was negotiated with an intent to discriminate against them on the basis of their age.

## IV.

■ In addition to the age discrimination claims discussed above, plaintiffs also alleged that defendant Union[7] had breached

---

6. As was noted earlier in this Opinion, plaintiffs began to accumulate both Plant-Clerical and Company-Clerical seniority in the Port Arthur Plant bargaining unit on January 1, 1981. Because plaintiff Ryman was always employed in a Group A position at the Port Arthur Plant, his Plant-Clerical and his Company-Clerical seniority were equal. The same is true for plaintiff Jones, because she had always worked in a Group B position at the Port Arthur Plant. Be-cause their Plant-Clerical and their Company-Clerical seniority were equal, it made no difference to plaintiffs whether reductions were based on Plant-Clerical or Company-Clerical seniority.

7. Because defendant Texaco played no part in the Union's alleged breach of its duty of fair representation, it could not be held liable for that breach. *See, Vaca v. Sipes,* 386 U.S. 171,

its duty of fair representation by negotiating in bad faith on behalf of plaintiffs and by failing to inform them of the change in the labor agreement prior to the ratification vote in 1982. The United States Supreme Court recognized in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) that a union violates its duty of fair representation only when its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190, 87 S.Ct. at 916. Thus, absent a showing on the part of the plaintiffs that defendant Union acted in bad faith or in an arbitrary or discriminatory manner during the 1982 labor negotiations, defendant Union cannot be deemed to have violated its duty of fair representation.

■ The evidence before this court revealed that, while defendant Union may have acted in a negligent manner, it did not act in bad faith nor were its actions arbitrary or discriminatory. During the 1982 labor negotiations, defendant Texaco proposed several changes in the collective bargaining agreement which were primarily aimed at consolidating crafts and eliminating certain job classifications in order to permit employees to assume a wider variety of responsibilities in their job assignments. Included among these proposed changes was a change in the manner by which employees were to be reduced from Group A to Group B. Although this latter change was included in the attachments to defendant Texaco's proposal, it was never formally discussed between the parties. The parties instead concentrated on certain other changes which had been regarded by the Union membership as being controversial. These other changes were openly presented to and discussed with the Union membership. Through inadvertence, however, defendant Union overlooked the change regarding reductions and thus failed to formally present that change to its membership.

Plaintiffs have failed to submit any evidence in this case which would suggest that defendant Union's failure to present this change was the result of any collusion between defendants or the result of an intentional desire on the part of defendant Union to withhold the extent of the changes from its membership. The fact that defendant Union made the Memorandum of Agreement, which contained the contract changes, available to anyone, including plaintiffs, for inspection at its Union hall prior to the ratification vote demonstrates that defendant Union was not intentionally attempting to conceal the change in the reduction procedures from its membership. Thus, at most, the evidence shows that defendant Union was negligent in its responsibilities to plaintiffs as their collective bargaining agent. The mere showing of negligence, poor judgment or ineptitude on the part of the Union, however, is insufficient in itself to establish a breach of the duty of fair representation. *See, e.g., Brown v. Trans World Airlines, Inc.*, 746 F.2d 1354 (8th Cir.1984); *Curtis v. United Transportation Union*, 700 F.2d 457 (8th Cir.1983). In light of plaintiffs' failure to show that defendant Union acted in bad faith or in an arbitrary or discriminatory manner, defendant Union is entitled to summary judgment against plaintiffs' claims for breach of the duty of fair representation. This court accordingly grants defendants' Motion for Summary Judgment as to those claims.

### V.

The court now turns to the issue of whether the plaintiffs' claims of retaliation should be dismissed. In their Second Amended and Supplemental Complaint, plaintiffs allege that defendant Texaco retaliated against them by failing to transfer them during the period of the layoffs. Plaintiff Jones, in addition, alleges that she has been harassed, that she has not been recalled to fill an alleged vacancy, and that

197 n. 18, 87 S.Ct. 903, 920 n. 18, 17 L.Ed.2d 842 (1967), and thus, the plaintiffs did not name it

as a party to that action.

seniority was improperly calculated in retaliation for her having filed this suit against the defendants. Plaintiffs also allege that defendant Union assisted defendant Texaco in its efforts to retaliate against them.

Under the Age Discrimination in Employment Act (ADEA), "[n]o civil action may be commenced by an individual ... until 60 days after a charge alleging unlawful discrimination has been filed with the [Equal Employment Opportunity] commission." 29 U.S.C. § 626(a)* (1982). The filing of such a charge is a jurisdictional prerequisite to suit under the ADEA. *Borumka v. Rocky Mountain Hosp. & Medical Serv.*, 599 F.Supp. 857, 859 (D.Colo.1984).

■ While both plaintiffs did file initial charges with the EEOC in 1983, those charges did not encompass the retaliation claims alleged in the amendments to plaintiffs' complaint. Under the Fifth Circuit's reasoning in *Gupta v. East Texas State Univ.*, 654 F.2d 411 (5th Cir.1981), this court has jurisdiction to hear plaintiffs' retaliation claims only if they "[grow] out of an administrative charge that is properly before the court." *Id.* at 414. To avoid the requirements of 29 U.S.C. § 626(d), the plaintiffs' retaliation claims must be "reasonably related to the allegations in [their] EEOC charge[s]". *Borumka v. Rocky Mountain Hosp. & Medical Serv.*, 599 F.Supp. at 859.

Looking at the specific facts of this case, plaintiffs alleged in their initial EEOC charges that they had been laid off because of their age. In the Second Amended and Supplemental Complaint, plaintiffs allege, in contract, that they had been retaliated against by defendant Texaco's failure to transfer them during the period of layoffs. Because transfers made at the discretion of defendant Texaco bear no relation to a layoff conducted pursuant to the provisions of the seniority system, the two claims cannot be deemed to be "reasonably related." Thus, plaintiffs' allegations regarding Texaco's failure to transfer them do not "grow out of" their claim of an alleged discriminatory layoff under the terms of a labor agreement.

Similarly, the allegation of harassment and improper calculation of seniority that plaintiff Jones raises in her Second Amended and Supplemental Complaint do not "grow out of" her initial EEOC charge, in which she alleged that she had been placed on a layoff list because of her age. The alleged harassment occurred long before her layoff, and her failure to raise it prior to June 24, 1985, means she has waived her right to pursue such claims now. The alleged miscalculation of seniority also occurred long before June 24, 1985, and, in fact, should have been included in the allegations of Plaintiff Jones' initial EEOC charge.

This court cannot properly entertain a claim under the Age Discrimination in Employment Act unless that Act's jurisdictional prerequisites have been met. Because of plaintiffs' failure to file charges with the EEOC which encompasses the retaliation claims discussed above, this court lacks subject matter jurisdiction over those claims. Accordingly, those retaliation claims are hereby dismissed.

With respect to plaintiff Jones' remaining allegations, she did file a charge of discrimination with the EEOC on July 26, 1985, in which she alleges that defendant Texaco failed to recall her to an alleged job vacancy in retaliation for her having filed her initial charge in 1983. Because the EEOC has not yet had the opportunity to investigate or conciliate this July 26, 1985, charge, plaintiff Jones' attempt to pursue this claim in this suit is premature. 29 U.S.C. § 626(d) (1982). Accordingly, this court dismisses that claim without prejudice so that the matter may be pursued further on the administrative level.

### VI.

For the reasons stated above, defendants' Motion for Summary Judgment is granted as to plaintiffs' claims of age discrimination and breach of the duty of fair representation and plaintiff Jones' retaliation claims is dismissed without prejudice.