875 F.2d 316
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James B. PARRISH, Plaintiff-Appellant,
v.
VOYAGER GROUP, INC., Defendant-Appellee.
 No. 88-2609.
 United States Court of Appeals, Fourth Circuit.
 Argued: Feb. 10, 1989.
Decided: May 19, 1989.
 
 William L. Auten, for appellant.
 Michael Terry Medford (Manning, Fulton & Skinner, on brief), for appellee.
 Before JAMES DICKSON PHILLIPS and CHAPMAN, Circuit Judges, and N. CARLTON TILLEY, Jr., United States District Judge for the Middle District of North Carolina, sitting by designation.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 James B. Parrish appeals from a district court order dismissing his age discrimination action against his former employer, Voyager Group, Inc. The district court dismissed Parrish's claim for his failure to file a written charge of his claim with the EEOC within the time prescribed by the Age Discrimination in Employment Act (the ADEA). Parrish filed his claim at the local EEOC office one day beyond the deadline after unsuccessfully attempting to file it on the last day when the office was closed due to inclement weather. We have concluded that under the exceptional circumstances presented here the district court improperly declined to exercise equitable discretion to forgive the untimely filing, and we therefore reverse.
 
 
 2
 * Voyager Group, Inc. (Voyager) employed Parrish as President and Chief Executive Officer (CEO) of its Automobile Dealer Resources Division in 1982. In May 1986 a Voyager executive told Parrish that plans were underway to acquire an agency owned by Andy Gill, and that, if the acquisition occurred, Parrish would no longer be CEO of the Division. The acquisition was successful; Gill was subsequently named CEO and Parrish was demoted. Voyager now claims that Parrish was uncooperative in his new position and consequently was fired on August 20, 1986. Although the termination did not become effective until the last day of the year, Parrish was immediately stripped of all management responsibility. Parrish claims that he was fully cooperative and asserts age discrimination as Voyager's real motivation.
 
 
 3
 Parrish recollects that he contacted an attorney near his home in Cary, North Carolina, approximately 30 days after he received notice of his termination to discuss any potential legal redress. He changed counsel in January 1987, retaining an attorney in Charlotte, North Carolina. Parrish testified at deposition that he was generally aware of his rights and time limitations under the ADEA, admitting that a federal notice of the rights and limitations was posted in the coffee room of his office. He also testified that he had seriously contemplated filing an ADEA discrimination charge with the EEOC for approximately 90 days before he actually did so on February 18, 1987.
 
 
 4
 Under the relevant statute, Parrish had 180 days from the date of the adverse employment action to file his charge with the EEOC. 29 U.S.C. Sec. 626(d)(1). The parties agree that the date upon which the filing period started to run is August 20, 1986, the date Parrish was notified of his termination. Although February 16, 1987, was the calendared last day for filing his charge, it was a federal holiday and all EEOC offices were closed. The next day, on February 17, Parrish attempted to file the charge but the EEOC office in Raleigh, the one nearest to Parrish's home, was again closed due to inclement weather. Parrish testified at deposition that he called this local EEOC office 18 to 20 times on the 17th but received no answer. He does not contend, however, that he attempted to contact any other EEOC office or to mail a charge to the local office. On February 18, when the local office reopened, Parrish personally filed there a written charge. Discounting the starting date of August 20, 1986, and the date of the federal holiday, Parrish filed his charge on the 181st day after the adverse action occurred--one day beyond the statutory limit.
 
 
 5
 After Parrish filed this claim, Voyager moved for summary judgment, claiming that the suit was barred by Parrish's failure to file a timely charge. The district court referred the motion to a federal magistrate, who recommended dismissal based on the charge's untimeliness. The district court rejected Parrish's objections to the magistrate's report, agreeing that:
 
 
 6
 1. Parrish's suit was barred by the 180 day limitation imposed by the ADEA;
 
 
 7
 2. Parrish was not entitled to the application of the doctrine of equitable tolling to his claim as Parrish was fully cognizant of Voyager's alleged discriminatory act; and
 
 
 8
 3. Parrish was not entitled to the application of the doctrine of equitable estoppel as Voyager did not engage in intentional misconduct causing Parrish to miss the deadline.
 
 
 9
 The court also conceded, however, that the question of whether general equitable principles should be invoked was a close one, but decided not to do so because Parrish "had consulted with legal counsel at least twice during the period of limitations and had ample opportunity to file his charge before the unfortunate sequence of events occurred."
 
 
 10
 This appeal followed.
 
 II
 
 11
 Both parties agree that Parrish filed his claim one day outside the statutory time period. The sole question before us then is whether the district court should have excused Parrish's failure to file within the 180 day period when the local EEOC office was closed without warning on the last permissible filing day.
 
 
 12
 Compliance with the ADEA's 180-day filing limitation is not jurisdictional. The limitation therefore is subject to waiver as well as tolling when equity so requires. Vance v. Whirlpool Corp., 716 F.2d 1010, 1012-13 (4th Cir.1983); Greene v. Whirlpool Corp., 708 F.2d 128, 130 (4th Cir.1983) (noting that tolling or waiver is permissible under "exceptional circumstances"). The magistrate, the district court and Voyager all restrict their discussions of equitable intervention on these facts to the doctrines of equitable tolling and equitable estoppel. Equitable tolling focuses on the plaintiff's excusable ignorance of the employer's discriminatory act; whereas equitable estoppel applies when, despite the plaintiff's knowledge of the facts, the defendant engages in intentional misconduct which causes the plaintiff to miss the filing deadline. Felty v. Graves-Humphreys Co., 785 F.2d 516, 519 (4th Cir.1986). Notwithstanding the focus by both parties and the district court on these two doctrines, they simply do not apply here--as neither Parrish's knowledge of the adverse employment action nor Voyager's conduct is questioned.
 
 
 13
 If these two doctrines--at least as they are currently developed--were the only types of equitable intervention permissible in this context, then the result reached by the district court would necessarily be commanded. None of our precedents suggest, however, that equitable intervention in this context need be that restrictive. As noted above, we have pointed out in previous cases that the non-jurisdictional nature of the filing limitation allows it to be tolled or waived when "equity so requires," Vance, 716 F.2d at 1012-13, or under "exceptional circumstances," Greene, 708 F.2d at 130. Compare Felty, 785 F.2d at 519 (limiting modification of the filing limitation to traditional notions of equitable tolling and estoppel when warranted by employer's conduct).
 
 
 14
 Based on these more general notions of allowable equitable intervention, we conclude that, despite the inapplicability of equitable tolling and estoppel principles, the district court erred in declining to invoke its more general equitable powers in behalf of a claimant who, having permissibly chosen to file on the last day of the filing period, was then thwarted by the unscheduled closing of the filing office. In such a case--and we emphasize the narrowness of our holding--we conclude that equitable intervention was required to avoid an unjust result.
 
 III
 
 15
 Voyager also objects to the exercise of equity in Parrish's behalf on the ground that Parrish's "lack of diligence" in asserting his claim should bar any equitable intervention. While it is axiomatic that "[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence," Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151 (1984), Parrish's conduct here is not of the type that we think should prevent equitable intervention. Voyager claims that the very act of waiting until the final day to file the written charge demonstrates Parrish's lack of diligence. We think it inappropriate, however, to attribute a decision to file on the last day of a statutorily-allowed filing period to lack of diligence when nothing more appears than that fact. In the absence of other indications, an equally plausible explanation is that last-minute filing reflects commendable reflection and restraint in deciding to invoke the legal process against an employer. Indeed the record here strongly suggests that Parrish was wrestling mightily with the decision through the filing period, and understandably came only late and reluctantly to the decision. That last-day filings are not only not per se questionable but indeed deserving of special solicitude, is reflected in the express concern for last-day office closings embodied in the civil rules. See Fed.R.Civ.P. 6(a) (last day of filing period not counted if it falls on "Saturday, Sunday, or other holiday" or on day when filing office "inaccessible " by reason of "weather or other conditions ") (emphasis supplied).
 
 
 16
 Voyager finally asserts that Parrish's attempts to file on the last day only at the local EEOC office clearly evidences his lack of diligence. According to Voyager, Parrish could and should have contacted a different EEOC office personally or instructed his attorney to file for him in the Charlotte office, rather than waiting until the next day--a day late--to file in the local office. Parrish counters with the explanation that Greene v. Whirlpool gave him and his attorney understandable reason to doubt whether those courses were open to him. In Greene we had held that a claimant's oral indication to an EEOC officer that he intended to file an ADEA claim was insufficient to satisfy Sec. 626(d)(1)'s timely filing requirement, noting specifically that a claimant must file a "written charge alleging unlawful discrimination ... within 180 days after the alleged unlawful practice occurred in order to comply with Sec. 626(d) of the ADEA." 708 F.2d at 130. In response to this argument, the district court reasoned that its holding
 
 
 17
 does not do violence to the Greene decision. As pointed out by the magistrate [Parrish] could have contacted any EEOC office and filed a charge of age discrimination against the Voyager. The court believes that an oral charge reduced to writing by EEOC staff and filed on plaintiff's behalf would have satisfied the Green requirement. See Michelson v. Exxon Research and Engineering Company, 808 F.2d 1005 (3d Cir.1987); Pirone v. Home Insurance Company, 507 F.Supp. 1281 (S.D.N.Y.1981)....
 
 
 18
 The cases cited by the district court in support of its conclusion are persuasive: "[R]equiring personal execution of the writing by the prospective plaintiff would serve no purpose other than to thwart otherwise valid complaints of age discrimination." Michelson, 808 F.2d at 1010. Even if we were persuaded by the Michelson line of reasoning, however, Greene remained the law in this circuit at the critical time. Without regard to whether the district court's interpretation of its implications is sound, Parrish's concern for its implications for his conduct was a wholly plausible one. We think it serves to avoid the conclusion that his caution reflected a lack of diligence.
 
 IV
 
 19
 In conclusion, we are persuaded that the district court erroneously declined to exercise its equitable powers to rescue Parrish's claim. Even though Parrish waited until the 180th day to attempt to file his written charge with the EEOC office, we think this cannot fairly be used to charge him with a lack of diligence barring equitable intervention. Furthermore, his actions--calling the local EEOC office 18 to 20 times the day that it closed unexpectedly and promptly filing the charge in person the very next day--actually support a finding of diligence rather than a lack of diligence.
 
 
 20
 Because we think equity requires intervention on these narrow facts, we reverse the district court's determination that Parrish's age discrimination claim is barred by his failure to file his EEOC charge within the time limits prescribed by the ADEA and remand for further proceedings.
 
 
 21
 REVERSED AND REMANDED.
 
 CHAPMAN, Circuit Judge, dissenting:
 
 22
 With all respect to what the majority has written, I must dissent. The majority concludes:
 
 
 23
 [T]he district court erred in declining to invoke its more general equitable powers in behalf of a claimant who, having permissibly chosen to file on the last day of the filing period, was then thwarted by the unscheduled closing of the filing office. In such a case--and we emphasize the narrowness of our holding--we conclude that equitable intervention was required to avoid an unjust result.
 
 
 24
 When we invoke the general equitable powers of the court, we must consider not just the rights of Mr. Parrish, but the rights of the defendant Voyager Group, Inc. Under the majority's view of equity, no consideration is given to the defendant's rights, and the defendant is put to the trouble and expense of defending itself on a claim which was not timely filed by a knowledgeable plaintiff. I suggest there should be a balancing of the equities, and if this is done, the equities are in favor of the defendant.
 
 
 25
 This is an unusual factual situation, not just because of the federal holiday and ice storm that closed the EEOC office in Raleigh, North Carolina for two days, but because Mr. Parrish is an unusual plaintiff. He was the Chief Executive Officer of the defendant's Automobile Dealers Resources Division, and as such he was paid a salary of $120,000 per year plus a substantial bonus. He received his salary plus his bonus for the remainder of 1986, after his termination in August 1986, and he was paid his full salary for the entire calendar year 1987. He admitted that he was familiar with ADEA and its time limitations for filing claims. He discussed his claim with an attorney within 30 days following his termination, and he later employed his present attorney, who was knowledgeable in ADEA law and was aware of the filing time requirement.
 
 
 26
 His decision to wait to the last day was calculated and purposeful. The majority states:
 
 
 27
 We think it inappropriate, however, to attribute a decision to file on the last day of a statutorily-allowed filing period to lack of diligence when nothing more appears than that fact. In the absence of other indications, an equally plausible explanation is that last-minute filing reflects commendable reflection and restraint in deciding to invoke the legal process against an employer. Indeed the record here strongly suggests that Parrish was wrestling mightily with the decision through the filing period, and understandably came only late and reluctantly to the decision.
 
 
 28
 The record clearly reflects and the brief states: "Parrish has specified that he was then seeking other employment and was concerned that his filing an employment discrimination charge might have an adverse impact upon his finding new employment."
 
 
 29
 It was for Mr. Parrish's benefit that he delayed filing his claim, and like all others who are well aware of time limits imposed by statute, he ran the risk of something unforeseen happening on the last day. He stated that he had a four-wheel drive vehicle available to take him to the office if it had been open, but he made no attempt to go to the office and leave the papers under the door or otherwise deposit them when he realized that the office would not open because of the weather.
 
 
 30
 When the equities of both parties are considered, I think they weigh heavily in favor of the defendant and I would affirm the decision of the district court.