**Calvin Coolidge GREENE, Appellee,**

v.

**WHIRLPOOL CORPORATION, Appellant.**

**No. 82–1635.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 10, 1983.

Decided May 31, 1983.

Rehearing and Rehearing En Banc Denied Aug. 2, 1983.

Fairchild, Senior Circuit Judge, sitting by designation, filed concurring opinion.

John T. Allred, Charlotte, N.C. (Julia V. Jones, Moore & Van Allen, Charlotte, N.C., on brief), for appellant.

C. Michael Wilson, Charlotte, N.C. (Griffin, Gerdes, Mason, Brunson & Wilson, Charlotte, N.C., on brief), for appellee.

Before WIDENER and HALL, Circuit Judges, and FAIRCHILD,* Senior Circuit Judge.

K.K. HALL, Circuit Judge:

Whirlpool Corporation (Whirlpool) appeals from a judgment entered on a jury verdict for Calvin Coolidge Greene (Greene) in his suit alleging violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634. The issue for our consideration is whether Greene filed a charge of discrimination within 180

---

* Honorable Thomas E. Fairchild, Senior Circuit Judge for the Seventh Circuit Court of Appeals, sitting by designation.

days of his alleged unlawful discharge as required under § 626(d) of the ADEA, as amended. The district court held that a timely charge had been filed. We disagree, and therefore, reverse the judgment below.

### I.

Greene was discharged from his job with Whirlpool on October 31, 1977. Approximately two weeks later, on either November 17 or 18, 1977, Greene went to the Charlotte, North Carolina office of the United States Department of Labor (DOL),[1] where he spoke with DOL employee Bob Smith. Greene testified at trial that he told Smith, "that I had worked for the Whirlpool Corporation all these years and that my performance had been okay, as far as I could determine; that the only reason I could see that they discharged me was discriminating on age because I was six weeks past 55." Greene further testified that Smith told him he would be sent a booklet which explained discrimination cases, and then Smith stated "if you find out enough information on it [Greene's alleged discriminatory discharge] you get back with us." Greene acknowledged that he received and read the booklet mailed to him which contained the ADEA, as amended, including the requirement that a charge of discrimination must be filed within 180 days of the alleged unlawful practice.

In October, 1979, after his former supervisor, Spagnuolo, had obtained a $51,977 jury verdict against Whirlpool for age discrimination,[2] Greene returned to the DOL. He spoke with another DOL employee about filing an age discrimination suit against Whirlpool. However, the DOL files do not reveal any charge filed by Greene against Whirlpool or show any correspondence between the DOL and Greene, other than a record showing that Greene was mailed a copy of the ADEA in November, 1977.

On October 26, 1979, Greene instituted this age discrimination suit. Whirlpool's main defense was that Greene had not filed a charge with the DOL within 180 days after his alleged unlawful discharge, as required by the statute. The district court, however, was not persuaded by this contention and concluded that Greene had filed a timely charge during his first visit to the DOL in November, 1977, and had thereby sufficiently complied with the 180-day notice requirement of § 626(d). Moreover, the district court found that Whirlpool, from 1977 through 1979, had failed to post the required ADEA informational notices on its premises in Charlotte, North Carolina, including the requirement that a charge be filed within 180 days. The district court, therefore, concluded that even if Greene's 1977 visit to the DOL did not meet the charge requirement of the statute, circumstances warranted tolling the 180-day filing period until September, 1979, when Greene retained an attorney and acquired actual knowledge of his rights. Further, the district court held that Greene's visit to the DOL in October, 1979, represented a second timely filing of a charge.

The jury thereafter returned a verdict for Greene. In addition, the district court awarded Greene liquidated damages, costs and attorneys' fees and ordered Whirlpool to reinstate Greene to a position equal to the one from which he had been discharged. From the judgment entered in favor of Greene, Whirlpool appeals.

### II.

On appeal, the pivotal inquiry is whether the lower court correctly determined that Greene filed a charge alleging unlawful discrimination with the DOL within 180 days of his discharge. Greene contends that he filed an oral charge of discrimination dur-

1. In 1977, when Greene was required to file a charge, the DOL was the enforcing agency for the ADEA. However, on July 1, 1979, the responsibility for enforcement of the ADEA was transferred to the Equal Employment Opportunity Commission (EEOC). Reorg. Plan No. 1 of 1978, 3 C.F.R. 321 (1979), *reprinted in* [1978] U.S.Code Cong. & Ad.News 9795.

2. *Spagnuolo v. Whirlpool Corporation*, 467 F.Supp. 364 (W.D.N.C.1979), *aff'd in part, rev'd in part* 641 F.2d 1109 (4th Cir.1981).

ing his first visit to the DOL. In contrast, Whirlpool asserts that Greene's conversation with Smith came far short of being a charge, and that even if it did constitute a charge, it was not in writing as required by § 626(d); and that therefore, this action must be dismissed. We agree with Whirlpool.

The express language of § 626(d) of the ADEA, as amended in 1978, requires the filing of a charge. This section reads, in pertinent part:

(d) No civil action may be commenced under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary. Such a charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred. . . .

In the present case, Greene, on his initial visit to the DOL merely mentioned to Smith, a DOL employee, that he thought he had been discriminated against because of his age. Obviously, Smith did not believe that Greene charged Whirlpool with discrimination because he told him to return if he obtained information that Whirlpool had discharged him because of his age. Moreover, Greene himself could not have believed that he filed a charge at that time or he would not have returned to the DOL in October, 1979. Hence, Greene's initial visit to the DOL was simply a request for information concerning age discrimination and nothing more.

Important to our consideration is the underlying purpose of § 626(d), and the legislative history is instructive in this regard. Prior to 1978, § 626(d) required that a "notice of intent to sue" be filed with the DOL. In 1978, this provision was amended to require that a "charge alleging unlawful discrimination" be filed with the DOL.[3] In approving this amendment, the Conference Committee reported:

This change in language is not intended to alter the basic purpose of the notice requirement, which is to provide the De-

partment with sufficient information so that it may notify prospective defendants and to provide the Secretary with an opportunity to eliminate the alleged unlawful practices through informal methods of conciliation.

H.R. No. 95–950, 95th Cong., 2 Sess. 12, *reprinted in* [1978] U.S.Code Cong. & Ad. News 504, 534. In the present case, because the Secretary had no knowledge of Greene's allegation of discrimination against Whirlpool, no opportunity existed for any informal methods of conciliation, conference and persuasion, as required by § 626(b), before the initiation of the suit. This is patently contrary to the purpose of the notice requirement.

Furthermore, although § 626(d) does not specify that a charge must be in writing, the Conference Committee's report is again enlightening. It states: "The conferees intend that the 'charge' requirement will be satisifed by the *filing of a written statement* which identifies the potential defendant and generally describes the action believed to be discriminatory." *Id.* (emphasis added). We find, as did the Second Circuit, in *Reich v. Dow Badische Co.,* 575 F.2d 363 (2d Cir.), *cert. denied* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978), when considering the earlier version of the statute, that § 626(d), by requiring a charge to be filed, implies that it must be written. We therefore conclude that a *written charge* alleging unlawful discrimination must be filed within 180 days after the alleged unlawful practice occurred in order to comply with § 626(d) of the ADEA, as amended.

We recognize that the 180-day provision of § 626(d) is not a jurisdictional prerequisite to a suit in federal court, and may under exceptional circumstances be tolled or waived. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1981). Nevertheless, we do not agree with the district court that the 180-day time period for filing a charge was

---

**3.** This amended version is effective "with respect to civil actions brought after the date of enactment of this act [April 6, 1978]." Public Law 95–256, Section 4(b)(2). Therefore, it is applicable to the instant case, which was filed on October 26, 1979.

tolled by Whirlpool's failure to post the required ADEA informational notices on its premises. The evidence clearly reveals that from Greene's first visit to the DOL in November, 1977, he acquired actual knowledge of the fact that a charge alleging discrimination must be filed with the DOL within 180 days after the alleged unlawful practice occurred. Therefore, under these circumstances, there is nothing to warrant the tolling of the usual 180-day filing requirement.

### III.

For the reasons stated, we conclude that Greene's failure to comply with § 626(d) is a bar to maintaining this action. Therefore, the other issues raised by Whirlpool on appeal need not be addressed. Accordingly, we reverse the judgment of the district court.

REVERSED.

FAIRCHILD, Senior Circuit Judge, concurring.

In substance, the district court found that Greene's conversation with Smith at the Department of Labor was, although oral, an unequivocal assertion, or "charge," that defendant had discriminated against Greene on account of age. In the light of all the circumstances, I agree that the finding of an unequivocal oral charge was clearly erroneous. I also agree that a case was not made out for tolling the 180 day filing requirement.

There having been no unequivocal oral charge of age discrimination, it seems unnecessary to decide whether a charge of age discrimination must be presented in writing in order to have been "filed." *Cf.* the fact situation presented in *Dickerson v. Deluxe Check Printers, Inc.,* 703 F.2d 276, 283–84 (8th Cir.1983).

If, however, the matter of written versus oral form is to be decided, it seems to me that the reasons for deeming an unequivocal oral charge sufficient preponderate.

Judge, now Chief Judge, Feinberg stated those reasons well in dissent in *Reich v.* *Dow Badische Co.,* 575 F.2d 363, 375–76 (2d Cir.1978).

It must be conceded at the outset that use of the word "filed" implies that the notice should be in writing. But the section does not make that requirement explicit and there are compelling reasons for not reading it into the statute. The ADEA is remedial legislation whose enforcement in large part depends upon the efforts of laymen. The terms of this statute should be liberally construed . . . to avoid frustrating potentially meritorious claims on hypertechnical grounds. See *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187, 193 (3d Cir.1977); *Moses v. Falstaff Brewing Corp.,* 525 F.2d 92, 93–94 (8th Cir.197[5]); cf. *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616 [619], 30 L.Ed.2d 679 (1972) (Title VII case). Moreover, the sparse legislative history on this point indicates that unequivocal oral notice should be sufficient. The Act as a whole reflects "a congressional desire to avoid some of the administrative logjams experienced under Title VII" and to simplify enforcement mechanisms. Comment, Procedural Prerequisites to Private Suit Under the Age Discrimination in Employment Act, 44 U.Chi.L.Rev. 457, 467 (1977). . . . See also 113 Cong. Rec. 7076 (1967) (testimony of Sen. Javits before the Labor Subcommittee of the Senate Labor and Public Welfare Committee regarding the ADEA). Thus, in enacting the ADEA, Congress declined to require that notice "shall be in writing under oath or affirmation . . .," as was done in Title VII, 42 U.S.C. § 2000e–5(b). Additionally, the Department of Labor, the agency charged with administering the ADEA, has urged that oral notice can satisfy section 626(d). See Brief for the United States as Amicus Curiae, *Shell Oil Co. v. Dartt,* 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977) (leave to file denied). In light of the strong policy favoring a simplified construction of procedural requirements under the ADEA, the pertinent legislative history and the Department of Labor's administrative interpretation, I would hold that unequivocal oral

notice can satisfy section 626(d). See, e.g., *Woodford v. Kinney Shoe Corp.*, 369 F.Supp. 911, 914 (N.D.Ga.1973); *Bishop v. Jelleff Assoc.*, 398 F.Supp. 579, 593 (D.D.C.1974); and *Sutherland v. SKF Industries, Inc.*, 419 F.Supp. 610, 615–16 (E.D. Pa.1976).

*Reich* involved the statute when it required filing of a "notice of intent to sue." The change to the term "charge" was part of an amendment intended to make it more likely that courts would reach the merits of the cases of aggrieved individuals. S.Rep. No. 493, 95th Cong. 1st Sess. 12, reprinted in [1978] U.S.Code Cong. & Ad.News 515; H.Rep. No. 950, 95th Cong., 2d Sess. 12, reprinted in [1978] U.S.Code Cong. & Ad. News 533–34. Therefore the reasoning of Judge Feinberg applies even more forcefully now.