**J.D. HAMILTON, Plaintiff–Appellee,**

v.

**1ST SOURCE BANK,**
**Defendant–Appellant.**

No. 89–2615.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 4, 1989.

Decided Feb. 5, 1990.

---

Philip Marshall Van Hoy (Van Hoy & Reutlinger, on brief), for defendant-appellant.

William L. Auten, for plaintiff-appellee.

Before SPROUSE, Circuit Judge, BUTZNER, Senior Circuit Judge, and MACKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

SPROUSE, Circuit Judge:

1st Source Bank appeals from a judgment of the district court awarding J.D.

Hamilton damages for discriminatory pay and discharge in violation of the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. §§ 621 *et seq.* The jury found that the 1st Source Bank (hereinafter "Bank") discriminated against Hamilton because of his age by paying him less than younger vice-presidents in the same job category and by discharging him. The district court denied the Bank's motion for judgment notwithstanding the verdict or alternatively for a new trial. We affirm in part and reverse in part.

## I *Facts*

On March 3, 1980, David L. Herring, chairman of the Bank's Truckers Bank Plan division, hired Hamilton, then fifty-three years old, to work as a vice-president in the Truckers Bank Plan division. In 1984, the Bank increased his base salary from $36,400 to $39,000 after a "standard to above standard" performance appraisal. On April 21, 1986, the Bank terminated Hamilton's employment without forewarning, indicating "Failure to Perform" on its termination form. On May 19, 1986, well within the statutorily prescribed 180–day period, Hamilton filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging discriminatory discharge because of age. When the EEOC did not commence enforcement proceedings within sixty days, Hamilton filed this action in the district court in North Carolina on February 13, 1987. After pretrial discovery in May 1987 revealed he was paid a lower salary than much younger vice-presidents in the same job category, Hamilton filed another charge with the EEOC on September 16, 1987, alleging pay discrimination. After the EEOC again did not institute enforcement actions, the district court granted Hamilton's motion to amend his complaint by adding this claim.

Trial was held to a jury. At trial Hamilton presented evidence of the higher compensation paid vice-presidents in his division who were eleven to eighteen years younger and the Bank's procedures for evaluating and handling unsatisfactory performance by these employees. The two younger vice-presidents in the same job category as Hamilton were paid starting salaries of $39,000 and $47,000, respectively, and received regular salary increases and bonuses despite lower performance evaluations. In addition, Hamilton's replacement was a younger man who was hired at a salary of $60,000, plus a $5,000 guaranteed bonus, rather than the salary of $39,000 a year which Hamilton was earning at the time of his discharge.

The jury returned a special verdict finding that the Bank paid Hamilton a lower salary on account of his age, that he was therefore entitled to $15,135, but that this discrimination was not willful. The jury also found that the Bank discharged Hamilton on account of his age, that he was entitled to $99,000 in back pay, and that this discrimination was willful. The district court accordingly entered judgment for $114,135 actual damages on the two counts ($15,135 plus $99,000), $99,000 liquidated damages on the willful discriminatory discharge count, $5,218.32 as prejudgment interest on the pay discrimination award, and $14,705.83 as prejudgment interest on the discriminatory discharge award. The Bank appeals, contending there was not sufficient evidence to uphold the discriminatory discharge claim; that the pay discrimination claim was time-barred; that damages on the pay discrimination claim could not be awarded for any period prior to two years before the filing of the amended complaint; that pay discrimination evidence was improperly included in plaintiff's exhibit regarding damages for the discharge claim; and that the district court erred in awarding prejudgment interest in addition to liquidated damages on the discharge claim.

## II *The Discriminatory Discharge Claim*

The Bank argues that the district court erred in refusing to grant its motion for a judgment notwithstanding the verdict or a new trial on the issue of an age-based discriminatory discharge because there was not sufficient evidence to have permitted that issue to go to the jury. We disagree.

It is well settled that a motion for judgment notwithstanding the verdict should be denied if there was substantial evidence presented to convince a jury of reasonable persons to arrive at its finding. *Wyatt v. Interstate & Ocean Trans. Co.,* 623 F.2d 888, 891 (4th Cir.1980). Neither the district court nor an appellate court in making this determination weighs the evidence or assesses the credibility of the witnesses. *Lust v. Clark Equip. Co.,* 792 F.2d 436, 437–38 (4th Cir.1986); *Taylor v. Home Ins. Co.,* 777 F.2d 849, 854 (4th Cir. 1985), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986); *Wilhelm v. Blue Bell, Inc.,* 773 F.2d 1429, 1432–33 (4th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986). In determining whether to grant a new trial, the district court may weigh the evidence, and its decision to grant or deny the motion for new trial is reversed only for abuse of discretion. *Taylor,* 777 F.2d at 855; *Wilhelm,* 773 F.2d at 1433. Here, we are persuaded that there was sufficient evidence relating to age-discrimination motivation on the part of the Bank to convince a reasonable juror that the Bank impermissibly discharged Hamilton because of his age, and we do not find the district court abused its discretion in denying the motion for a new trial.

The Bank contended at trial that Hamilton was fired because he consistently refused to follow orders in the processing of a loan to a trucking company, his actions contributing considerably to the $2 million loss sustained by the Bank because of this bad loan. Hamilton, however, elicited testimony from the chairman of the Truckers Bank Plan division, David Herring, that after Herring's request that Hamilton get titles to equipment to secure that loan, Hamilton could not in fact have acquired such titles, because the Bank had been defrauded.

In addition, Hamilton produced evidence that in his case the Bank failed to follow established procedures for handling perceived deficiencies in the performance of its employees. The Bank's employee handbook describes its policy for dealing with unacceptable performance as "constructive review ... a disciplinary procedure consisting of a series of progressive steps" beginning with "constructive counseling," followed by a "written warning" and culminating in "termination" for lack of improvement. The Bank followed these procedures when it rated another vice-president's performance as "marginal": the Bank notified him, gave him ninety days to improve, and subsequently raised his salary when his performance did improve. Hamilton was discharged, however, without written warning or counseling; the reason given was "Failure to Perform" on the Bank's termination report.

Hamilton also presented evidence of the Bank's "age-consciousness" in its dealings with employees generally and with him specifically. The performance appraisal and confidential management skills inventory forms both prominently record the employee's age at the top of the form. Thomas P. Riley, president of the Truckers Bank Plan division and Hamilton's immediate supervisor, had asked Hamilton his age and his retirement intentions and had commented on his baldness. The jury could have believed it was Riley who made the decision to terminate Hamilton, based on intra-office memorandum correspondence about his termination between Riley and Herring. Also, the personnel notice terminating Hamilton's employment was dated as approved by Riley on April 21, 1986, but was not dated as approved by Herring until June 6, 1986 (after Hamilton had filed his EEOC complaint).

In our view, the above constitutes substantial evidence to support the jury's finding of a discriminatory discharge. We also do not think the district court abused its discretion in denying the motion for a new trial.

### III *The Pay Discrimination Claim*

The jury found that the Bank had discriminated against Hamilton by paying him considerably less than it paid younger executives performing the same duties and that this discrimination was based on age. The Bank contends that Hamilton's pay discrimination claim was statutorily time-barred

and that the district court therefore erred in allowing the claim to be submitted to the jury. Section 626(d) of the ADEA states:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred....

The Bank's position is that the 180–day period began to run on April 21, 1986, when Hamilton was discharged. Hamilton's position is that the period did not begin to run until May 1987, when, through pretrial discovery on the discriminatory discharge claim, he first became aware that younger vice-presidents were paid significantly higher salaries than himself.

The question of when the 180–day period begins to run on a claim of pay discrimination has not been previously presented to this court. A number of United States Supreme Court and Fourth Circuit opinions have dealt with the question of when the 180–day period begins to run on a claim of discriminatory discharge or a claim that a facially neutral seniority system has discriminatory effect.[1] *Lorance v. AT & T Technologies, Inc.,* —— U.S. ——, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989); *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981); *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *English v. Pabst Brewing Co.,* 828 F.2d 1047 (4th Cir.1987), *cert. denied,* 486 U.S. 1044, 108 S.Ct. 2037, 100 L.Ed.2d 621 (1988); *Morse v. Daily Press, Inc.,* 826 F.2d 1351 (4th Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *Felty v. Graves–Humphreys Co.,* 785 F.2d 516 (4th Cir.1986); *Greene v. Whirlpool Corp.,* 708 F.2d 128 (4th Cir.

1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 171 (1984); *Price v. Litton Business Systems,* 694 F.2d 963 (4th Cir. 1982); *Lawson v. Burlington Indus., Inc.,* 683 F.2d 862 (4th Cir.), *cert. denied,* 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982). The termination cases have held that a plaintiff must file his or her claim within 180 days of receiving actual, unequivocal notice that employment will be terminated, as opposed to the date of actual termination. This is true even if the claimant does not learn until later that the discharge was discriminatory. Similarly, a plaintiff must file charges within 180 days of the institution of a new seniority system, rather than at a later date when the discriminatory effects of the system are felt.

A key element in this line of cases was the fact that the plaintiff had actual notice that she or he would be discharged or that the seniority system was being implemented. In *Ricks,* for example, a college professor was notified that he would not be granted tenure and was offered a one-year terminal contract. In ruling whether his Title VII complaint was timely filed, the Supreme Court held "that the limitations periods began to run when the tenure decision was made and Ricks was notified," as opposed to when his employment actually terminated. 449 U.S. at 259, 101 S.Ct. at 504. Similarly, in the other cases cited above, the courts found the limitations periods began to run at the point the plaintiffs received notice that their employment would be terminated or that a different seniority system was instituted. The fact that the plaintiffs had notice played a crucial part in the courts' findings.

 Federal courts generally apply the "discovery rule" to construe statutes of limitations: the statute begins to run when the plaintiff discovers, or in the exercise of reasonable diligence should discover, the facts giving rise to a claim. *See, e.g.,*

---

1. Many of these cases deal with claims under Title VII of the Civil Rights Act of 1964. Title VII and the ADEA "share a common purpose." *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979). Both acts require that the plaintiff file a charge with the EEOC within 180 days after the alleged

unlawful practice occurred. *Compare* 42 U.S.C. § 2000e–5(e) *with* 29 U.S.C. § 626(d). Therefore, cases construing Title VII are relevant to ADEA issues. *See Northcross v. Board of Education,* 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973); *Chapman v. Homco, Inc.,* 886 F.2d 756, 758 n. 3 (5th Cir.1989).

Gould v. United States Dep't of Health & Human Servs., 884 F.2d 785 (4th Cir.1989) (Federal Tort Claims Act); *Blanck v. McKeen*, 707 F.2d 817, 819 (4th Cir.), *cert. denied*, 464 U.S. 916, 104 S.Ct. 279, 78 L.Ed.2d 258 (1983) (first and fifth amendments); *NLRB v. Allied Products Corp.*, 548 F.2d 644, 650 (6th Cir.1977) (National Labor Relations Act). The Supreme Court has held that the 180-day period for filing charges with the EEOC is not jurisdictional and is subject to equitable doctrines such as waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 398, 102 S.Ct. 1127, 1132, 1135, 71 L.Ed.2d 234 (1982). The Supreme Court also has repeatedly observed that a civil rights statute such as the ADEA, which provides for the judicial process to be initiated by laypersons, should be construed so as to maximize the likelihood that a claimant will receive the benefit of the law. *Id.* at 394–95, 102 S.Ct. at 1133; *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 761, 99 S.Ct. 2066, 2074, 60 L.Ed.2d 609 (1979); *Love v. Pullman Co.*, 404 U.S. 522, 526–27, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1972). In *Ricks*, the Court noted:

> We recognize, of course, that the limitations periods should not commence to run so soon that it becomes difficult for a layman to invoke the protection of the civil rights statutes. See [*Oscar Mayer v. Evans; Love v. Pullman*]. But, for the reasons we have stated, there can be no claim here that Ricks was not abundantly forewarned.

449 U.S. at 262 n. 16, 101 S.Ct. at 506 n. 16.

Whether an individual has been adequately forewarned for the most part depends on the circumstances of the case. In Title VII and ADEA discharge cases holding that the statute of limitations properly ran from the date of the employee's discharge, for example, the discharged employee had clearly received notice of the discharge. *Chardon*, 454 U.S. 6, 102 S.Ct. 28; *Ricks*, 449 U.S. 250, 101 S.Ct. 498; *English*, 828 F.2d 1049–50; *Morse*, 826 F.2d 1351; *Felty*, 785 F.2d 516; *Greene*, 708 F.2d 128; *Price*, 694 F.2d 963; *Lawson*, 683 F.2d 862. In reviewing a pay discrimination case to determine whether it

is one wherein it is "difficult for a layman to invoke the protection of the civil rights statutes" rather than a claim about which the plaintiff has been "abundantly forewarned," we should be aware of critical distinctions between types of discrimination claims. At the moment an employee is discharged, she or he is on notice to inquire whether there was discriminatory motive for the discharge, and is alerted to file a claim with the EEOC within 180 days if he or she so suspects. In marked contrast, there is no reason to suspect discrimination each time one is handed a paycheck. The Bank does not argue that Hamilton should have known about the difference between his salary and that of other vice-presidents at any time prior to the pretrial discovery; indeed, it points out that normal and prudent American business practice is to discourage sharing information about salaries.

 Given this characteristic of pay discrimination, we think it appropriate to apply the equitable rule for construing statutes of limitations—that the period should not begin to run until "a reasonable plaintiff should have known facts that would support a charge of discrimination." *EEOC v. O'Grady*, 857 F.2d 383, 393–94 (7th Cir.1988). The answer to the Bank's protestations that this construction may permit an action to be brought many years after an employee has been discriminatorily paid, is that such a discovery rule is circumscribed by the requirement that the claimant must have been reasonably prudent in exercising potential opportunities to discover putative discrimination. A court could not find plaintiffs sitting on their rights for years to have been reasonably prudent. At any rate, such are certainly not the facts before us.

Here, Hamilton filed his initial complaint of discriminatory discharge well within the 180-day period. Through pretrial discovery on that claim, he first became aware of the fact of pay discrimination. Well within 180 days of that discovery, he filed a charge relating to that claim. The purpose of the 180-day limitations period is to protect against prosecution of stale claims, but that interest is balanced against the inter-

est in protecting valid claims. *Lorance,* 109 S.Ct. at 2269. Hamilton was not sitting idly by, allowing his claims to grow stale. In fact, he became aware of the pay discrimination when he did only because he acted expeditiously to protect his discriminatory discharge claim.

In our view, the congressional policy of providing relief to employees who have suffered economically because of age discrimination will be served by recognizing a "discovery" rule applicable to the controlling statute of limitations—a rule that the statute begins to run when an employee discovers or by exercise of reasonable diligence could have discovered that she or he was a victim of pay discrimination. We thus affirm the district court's action allowing the pay discrimination claim to go to the jury.[2] Additionally, we hold that substantial evidence supported the jury's verdict that Hamilton was the subject of pay discrimination because of his age.[3]

## IV Statute of Limitations on the Pay Discrimination Damages

The district court permitted the jury to consider plaintiff's exhibit which calculated damages on the pay discrimination claim by comparing Hamilton's salary to that of other vice presidents beginning in September 1983. The Bank argues that, even if the pay discrimination claim was not barred altogether, the district court erred in not limiting the recovery of back pay to two years prior to the filing of the amended complaint. We agree that the district court erred, but hold that the recovery period should be limited to two years prior to the filing of the original complaint.

At 29 U.S.C. § 626(e)(1), the ADEA adopts the statute of limitations of the Portal–to–Portal Pay Act, 29 U.S.C. § 255(a). That section provides that an action "shall be forever barred unless commenced within two years after the cause of

action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." Courts have interpreted this provision as limiting recovery for back wages to the two-year period prior to the filing of a complaint for a nonwillful violation in the context of a Federal Equal Pay Act claim. *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1051 (5th Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973); *Bickley v. University of Maryland,* 527 F.Supp. 174, 181 (D.Md.1981); *Burkey v. Marshall City Bd. of Educ.,* 513 F.Supp. 1084, 1098 (N.D. W.Va.1981); *contra Strong v. Demopolis City Bd. of Educ.,* 515 F.Supp. 730, 735 (S.D.Ala.1981).

We believe that § 255(a) also limits the recovery of back pay for a violation of ADEA to two or, if the violation is willful, to three years prior to the filing of a complaint. Here, the jury found that the pay discrimination was nonwillful, so the two-year limitation applies. Because the pay discrimination claim added in the amended complaint arose out of the same allegedly discriminatory employer practices as the original complaint, the amended complaint relates back to the date of the original complaint under Rule 15(c) of the Federal Rules of Civil Procedure. Moreover, the discovery of the difference in pay was no surprise to the Bank, which had knowledge of its own pay scales. Consequently, Hamilton should only have been awarded damages for the time he was employed during the two-year period prior to February 13, 1987, the date that the original complaint was filed. We remand for determination of the proper calculation of damages for pay discrimination for the period of February 13, 1985, through April, 21, 1986, the date Hamilton was terminated.

## V Prejudgment Interest and Liquidated Damages

The jury found that the Bank's actions on the pay discrimination charge were

---

**2.** Because of our holding here, we need not reach the Bank's contention that, if the pay discrimination claim were time-barred, the case should be remanded for recalculation of the discriminatory discharge damages.

**3.** See the recitation of facts in Part I of this opinion and the discussion of substantial evidence in Part II.

not willful, but that the discriminatory discharge was willful. As liquidated damages, therefore, the district court properly doubled the actual damages on the discriminatory discharge count. 29 U.S.C. § 626(b). The district court also awarded prejudgment interest on the actual damages for both counts.[4] The Bank in its final argument asserts that it was error for the district court to award prejudgment interest on the discharge claim when it had already awarded liquidated damages. We agree.

The ADEA provides that damages are to be awarded in accordance with §§ 16 and 17 of the Fair Labor Standards Act (FLSA). 29 U.S.C. § 626(b). Section 16 of FLSA provides that violators of that act are liable both for the amount of unpaid overtime or minimum wages[5] and for that amount again as "liquidated damages." 29 U.S.C. § 216(b). In *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 715–16, 65 S.Ct. 895, 906, 89 L.Ed. 1296 (1945), the United States Supreme Court held that FLSA's liquidated damages were provided in lieu of calculating the costs of delay—which is the function of prejudgment interest—and therefore that a claimant could not recover both prejudgment interest and liquidated damages.

■■■ In 1981, this court considered whether an ADEA plaintiff could recover prejudgment interest as well as liquidated damages; relying on *Brooklyn Savings*, we held that she or he could not do so. *Spagnuolo v. Whirlpool*, 641 F.2d 1109, 1114 (4th Cir.), *cert. denied*, 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981). Nearly all other circuits that considered this question reached the same conclusion. *O'Donnell v. Georgia Osteopathic Hosp., Inc.*, 748 F.2d 1543, 1552 (11th Cir.1984), *overruled by Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094, 1101–02 (11th Cir.1987); *Blim v. Western Elec. Co.*, 731 F.2d 1473, 1479–80 (10th Cir.), *cert. denied*, 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161

(1984); *Rose v. Nat'l Cash Register Corp.*, 703 F.2d 225, 230 (6th Cir.), *cert. denied*, 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983); *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1101–03 (8th Cir.1982); *Kolb v. Goldring, Inc.*, 694 F.2d 869, 875 (1st Cir. 1982). *Contra Criswell v. Western Airlines, Inc.*, 709 F.2d 544, 556–57 (9th Cir. 1983), *aff'd on other grounds*, 472 U.S. 400, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985). Then, in 1985, the Supreme Court held that the remedial provisions of ADEA and FLSA were not identical and that liquidated damages under ADEA were intended to be punitive. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125–26, 105 S.Ct. 613, 623, 83 L.Ed.2d 523 (1985). Since *Thurston*, the circuits have differed on the question of whether their previous holdings concerning prejudgment interest in ADEA cases are still valid. *Reichman v. Bonsignore, Brignati & Mazzotta*, 818 F.2d 278, 281–82 (2d Cir.1987); *Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094, 1101–02 (11th Cir.1987); *Coston v. Plitt Theatres, Inc.*, 831 F.2d 1321, 1335–37 (7th Cir.1987), *vacated on other grounds*, 486 U.S. 1020, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988).

We think that *Thurston* does not require us to reverse our previous holding regarding prejudgment interest and liquidated damages. *Thurston* did not address the issue of prejudgment interest, and its holding regarding liquidated damages as punitive was in the context of defining the standard for "willfulness." Without a more direct mandate from the Supreme Court, we will not disturb our previous decision on this matter. *Hutchins v. Woodard*, 730 F.2d 953, 957 (4th Cir.1984); *cf. Linn v. Andover Newton Theological School, Inc.*, 874 F.2d 1, 7 n. 9 (1st Cir. 1989). Therefore, on remand the district court should enter judgment on the discriminatory discharge claim as previously calculated, except without any amount for prejudgment interest.

---

4. Both parties agreed that interest should be calculated by the court rather than the jury, and the district court instructed the jury not to include interest in its calculations.

5. For purposes of the ADEA, amounts owing due to discriminatory actions are treated as minimum wage amounts or unpaid overtime. 29 U.S.C. § 626(b).

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

MacKENZIE, Senior District Judge, dissenting:

Although I agree that there was sufficient evidence to support the jury's finding of a discriminatory discharge (Part II) and that the district court improperly awarded both liquidated damages and prejudgment interest (Part IV), I respectfully dissent from that portion of the opinion regarding the timeliness of the pay discrimination claim (Part III).

---

The statute that governs the time period for filing pay discrimination claims is 29 U.S.C. § 626(d). In clear and unequivocal language, § 626(d) states that no civil action may be filed

"until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission [EEOC]. Such a charge *shall* be filed—

(1) *within 180 days after the alleged unlawful practice occurred....*"

29 U.S.C. § 626(d) (emphasis added).

The plaintiff was discharged on April 21, 1986; accordingly, any discrimination in pay *occurred* no later than April 21, 1986. The plaintiff raised a pay discrimination charge with the EEOC for the first time on September 16, 1987, *seventeen months* after the alleged unlawful practice occurred.

Although § 626(d) unambiguously establishes a 180-day rule, federal courts have permitted plaintiffs to assert equitable tolling, equitable estoppel, or waiver in exceptional circumstances. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Greene v. Whirlpool Corp.,* 708 F.2d 128 (4th Cir. 1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct.

707, 79 L.Ed.2d 171 (1984). Yet, as admitted by plaintiff and his counsel (brief of appellee at 24) and agreed to by the majority in its opinion (pp. 164–65), this is not a case involving the application of the doctrines of equitable tolling, equitable estoppel, or waiver.[1] Rather, they find, based on an "equitable rule," that the 180-day filing period does not *begin* to run until the plaintiff has discovered the alleged discrimination. As the language of the statute in no way intimates any such discovery rule, I dissent from the majority's adoption of this "equitable rule."

The creation of a discovery rule in this case is totally in conflict with the plain wording of the statute that the pay discrimination charge must be filed "within 180 days after the alleged unlawful practice *occurred....*" Additionally, the acceptance of a discovery rule for pay discrimination claims is patently inconsistent with the established rule applied to discriminatory discharge claims.

In *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the United States Supreme Court held that the limitations period commenced to run when the discharge decision was made and the affected party was notified *of that decision,* not when the party was notified of facts giving rise to a claim.[2] *Id.* at 259, 101 S.Ct. at 506. The majority correctly focuses on notification as the determining factor for commencing the running of the 180 days. Yet, in cases concerning discriminatory discharge, notification of the discharge is the focal point, *not* notification of the alleged discrimination. *See Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), *reh'g denied,* 454 U.S. 1166, 102 S.Ct. 1042, 71 L.Ed.2d 322 (1982) (claimants notified on date they received letters stating final decision to terminate their appointments); *Delaware*

1. Thus, the majority's reliance on *EEOC v. O'Grady,* 857 F.2d 383 (7th Cir.1988), appears misplaced. That case centers on the doctrine of equitable tolling. The court does not purport to create a new "equitable rule" that commences the running of the statutory period from the date of discovery of discriminatory practices.

2. Even though the majority, if not all, of the reported cases concerns discharge claims, these cases are instructive of the proper standards to be followed for pay discrimination claims. In pay discrimination matters, the alleged discrimination necessarily must have occurred on, or before, the last day of employment and pay.

*State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (limitations period runs from June 26, 1974, date Ricks was notified that he was denied tenure). The majority wishes to alter this rule in matters concerning pay discrimination (his "discovery") without regard to the date of notification of discharge or payment. This approach directly conflicts with the *Ricks–Chardon* rule. *See Chapman v. Homco Inc.*, 886 F.2d 756 (5th Cir.1989) (Fifth Circuit refuses to adopt discovery rule in discriminatory discharge cases).

Indicative of this Circuit's analysis of ADEA claims is Judge Hall's opinion in *Felty v. Graves–Humphreys Co.*, 785 F.2d 516 (4th Cir.1986). In unambiguous language, this court stated that:

> Felty's attempt on appeal to engraft a knowledge component on the *Chardon–Ricks–Price* rationale is without merit. A plaintiff's lack of knowledge of the discriminatory nature of *an employment decision* and the reasons for that lack of knowledge are relevant to an analysis of equitable tolling but play *no part in determining the beginning* of the statutory limitation period.

*Id.* at 518–19 (emphasis added). As emphasized, this court refused to limit its ruling to only discharge claims; rather, the plaintiff's knowledge of the defendant's discriminatory acts is irrelevant in an employment decision. Therefore, in this matter, absent any claim of equitable tolling, the statutory limitations period began to run on April 21, 1986.

As the Supreme Court has adopted the plain meaning of the wording of § 626(d) and not adopted a discovery rule for discharge claims, I see no reason to now adopt a discovery rule for pay claims. On the facts of this case, the distinction between pay and discharge claims is a distinction without a difference. As any unlawful practice of discriminatory pay must have *occurred* on, or before, April 21, 1986 (the last day of employment), I believe that this is the proper date to commence the running of the 180–day provision. Therefore, I must record my dissent to Part III of the majority opinion. I would dismiss the pay discrimination claim as untimely filed.