Clarence BARROW, Plaintiff–Appellant,

v.

**NEW ORLEANS STEAMSHIP ASSOCIATION, et al., Defendants–Appellees.**

No. 90–3563.

United States Court of Appeals, Fifth Circuit.

June 6, 1991.

Victor R. Farrugia, Fine & Fine, New Orleans, La., for plaintiff-appellant.

Michael T. Tusa, David E. Walker, Walker, Bordelon, Hamlin, Theriot & Hardy, New Orleans, La., for New Orleans S.S. Ass'n.

William Lurye, Gardner, Robein & Urann, Metairie, La., for Local 3000.

Before CLARK, Chief Judge, WILLIAMS and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Clarence Barrow, a 54-year-old longshoreman, filed this suit against the General Longshore Workers Local Union No. 3000 (Local 3000) and the New Orleans Steamship Association (NOSSA). Barrow asserts that Local 3000 and NOSSA discriminated against him based on his age by entering a collective bargaining agreement (CBA) which altered longshoremen's seniority status and by applying the new seniority system in a discriminatory manner. Barrow also alleges that the defendants retaliated against him for exercising his statutory rights. Barrow further contends that the defendants breached their contractual obligations under the CBA. Finally, Barrow asserts state law claims for infliction of emotional distress. The district court granted summary judgment for the defendants, holding that Barrow's claims had prescribed. We affirm in part, vacate in part, and remand for further proceedings in accordance with this opinion.

I.

In February 1988, the defendants signed the CBA at issue. The agreement became effective March 1, 1988. Before the agreement, longshoremen with 20 years of relevant work were classified as A–1, the choice classification for obtaining work. Longshoremen with between 10 and 20 years of work were A–2; and longshoremen with less than 10 years were A–3. After the CBA, all longshoremen with more than 15 years of work were classified as A–1. All other longshoremen were A–2's, and the designation A–3 was eliminated. Barrow, an A–1 longshoreman under both systems, alleges that this new classification system increased the number of A–1 longshoremen thereby adversely affecting him in securing work.

In May 1988, Barrow and 155 other members of Local 3000 filed a grievance against the union president for signing the CBA without membership approval. This claim was not fully resolved until January 1989. At that time, a committee appointed by the International Longshoremen's Association (ILA) found that the local president had

authority to sign the CBA. In February 1989, the ILA sent its findings to the union members who had filed the grievance.

In April 1989, Barrow went to the NLRB to complain that he was being discriminated against because of his age. The NLRB referred Barrow to the EEOC. In May 1989, Barrow filed age discrimination charges at the EEOC against Local 3000 and NOSSA. After filing the charges at the EEOC, Barrow alleges he found it even more difficult to get work. He cites several instances which presumably form the basis for his retaliation and emotional distress claims. In September 1989, the EEOC issued Barrow a no-cause determination on his age discrimination charges and a right-to-sue letter. Barrow sued Local 3000 and NOSSA in January 1990.

In June 1990, the defendants moved for summary judgment on Barrow's claims. The hearing for these motions was set for July 11, 1990. On July 6, 1990, Barrow requested that the hearing be continued. Barrow explained that Local 3000 was late in responding to his discovery and that he needed additional time to review the requested information before he could adequately oppose the motions for summary judgment. On July 9, 1990, the district court cancelled oral argument and granted defendants' motions for summary judgment. Barrow then timely lodged this appeal.

## II.

■ Barrow first argues that the district court erred in not granting his request for additional time to respond to defendants' motions for summary judgment. Barrow contends that the district court abused its discretion in requiring him to prepare his opposition to the summary judgment motions without documents he had requested from Local 3000 including minutes of the union meetings. The pretrial conference in Barrow's case was set for July 26, 1990. All discovery was to be completed at least 21 days before that date, or on July 5, 1990. Thus the hearing on the defendants' summary judgment motions, scheduled for July 11, 1990, was set for approximately one week after the discovery cutoff and two weeks before the pretrial conference. These dates were established at a February 1990 scheduling conference. The district court allowed Barrow adequate time to complete his discovery and did not abuse its discretion in denying Barrow's motion for continuance on the hearing.

## III.

Barrow next argues that the district court erred in dismissing his suit with prejudice. In his complaint, Barrow alleged four primary causes of action. First, he alleged age discrimination in both the adoption of the new seniority system and in its discriminatory application. Second, Barrow contended that the defendants retaliated against him for filing a charge with the EEOC concerning the alleged age discrimination. Third, Barrow alleged that the defendants breached the CBA both by discriminating against him based on age and by violating the provision that all regular gangs be filled. Finally, Barrow asserted pendent state claims of intentional or negligent infliction of emotional distress. We will address each of Barrow's claims in turn.

### A. The Age Discrimination Claim

■ Barrow first argues that the district court erred in concluding that his age discrimination claim was time barred. Barrow contends that he was discriminated against based on his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. He contends that the defendants accomplished this discrimination by adopting the new seniority system and by continuing to apply that system. The district court dismissed Barrow's age discrimination claim finding that it "was not timely filed with the EEOC, barring this suit brought under the ADEA." The district court relied on a section of the ADEA which provides that a charge of discrimination shall be filed with the EEOC "within 180 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1). If an EEOC charge is untimely filed, a suit based upon the un-

timely charge should be dismissed. *McClinton v. Alabama By–Prods. Corp.*, 743 F.2d 1483, 1485 (11th Cir.1984) (citing *Templeton v. Western Union Tel. Co.*, 607 F.2d 89, 91 (5th Cir.1979) (per curiam)).

In his deposition, Barrow admitted that as of April 1988 he was aware that the modified seniority system would have an "unfair effect" upon him because of his age. However, Barrow did not file his charge with the EEOC until May 1989, more than one year later. Barrow argues that this charge was still timely because he suffered discrimination within 180 days of filing it. Barrow contends that he visited the hiring center twice a day, every day from the institution of the new seniority system until the date he filed his charge with the EEOC. He contends that each visit in which he was refused employment because of his age was a separate and distinct act of discrimination which started the 180–day filing period.

The defendants contend that any discrimination claim based upon a new seniority system must be filed with the EEOC within 180 days of adoption of the system. *See Lorance v. AT & T Tech., Inc.*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989); *see also* Gould, *The Supreme Court and Employment Discrimination Law in 1989: Judicial Retreat and Congressional Response*, 64 Tul.L.Rev. 1485, 1511–13 (1990). In *Lorance*, female employees sued under Title VII, alleging that the company's seniority system discriminated against them on the basis of their sex. The district court granted summary judgment for the company on grounds that the suit was time barred because the EEOC charges were filed more than 180 days after the seniority system was adopted. The Supreme Court agreed, holding that "the limitations period [for filing a charge] will run from the date the system was adopted." 490 U.S. at 909, 109 S.Ct. at 2267. The Court held that it is the seniority system's "adoption which triggers the limitations period" for filing a discrimina-

tion charge and such charge must be filed within 180 days of the adoption. *Id.* at 911, 109 S.Ct. at 2268; *see Hendrix v. City of Yazoo City, Miss.*, 911 F.2d 1102, 1104 (5th Cir.1990) ("the discriminatory adoption of a facially neutral seniority system [is] a single violation triggering the statute of limitations, rather than a continuing violation renewed with each [application]").

The Fourth Circuit has applied the logic of *Lorance* to an ADEA case. In *Hamilton v. 1st Source Bank*, 895 F.2d 159, *aff'd in part & rev'd in part on other grounds en banc*, 928 F.2d 86 (4th Cir.1990), the court discussed the timeliness of age discrimination claims based on the effects of a seniority system. The *Hamilton* court stated that under the ADEA, "a plaintiff must file charges within 180 days of the institution of a new seniority system, rather than at a later date when the discriminatory effects of the system are felt." *Id.* at 163. The court further noted that "a key element" in this line of ADEA cases was that the plaintiff had "actual notice ... that the seniority system was being implemented." *Id.* Barrow admitted in his deposition that he had such notice at least by April 1988.

■ This issue is one of first impression in this circuit. However, the reasoning of the Title VII cases of *Lorance* and *Hendrix* applies with equal force to this ADEA claim.[1] *See, e.g., Lorance*, 490 U.S. at 911, 109 S.Ct. at 2268 ("it is the date of th[e] signing [of the underlying agreement] which governs the limitations period"); *Hendrix*, 911 F.2d at 1104 (litigation over the effects of a seniority system adopted outside the 180–day period would require litigating events which " 'ha[ve] no present legal significance' ") (quoting *United Air Lines v. Evans*, 431 U.S. 553, 560, 97 S.Ct. 1885, 1890, 52 L.Ed.2d 571 (1977)). We therefore follow the Fourth Circuit's reasoning in *Hamilton* and hold that a plaintiff must file an ADEA charge with the EEOC within 180 days of his knowledge of

---

1. Rulings interpreting Title VII are generally regarded as authoritative in ADEA cases. *See Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979);

*Chapman v. Homco, Inc.*, 886 F.2d 756, 758 n. 3 (5th Cir.1989) (per curiam), *cert. denied*, —— U.S. ——, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990).

adoption of an allegedly discriminatory seniority system regardless of when the effects of such system are actually felt. Thus Barrow's deadline for filing his EEOC charge based on the adoption of the seniority system was October 1988, some seven months before he filed the charge in May 1989.

Barrow further argues that even if he should have filed his EEOC charge by October 1988, that time limit should be equitably tolled. The Supreme Court has held that the 180–day period for filing charges with the EEOC is subject to equitable doctrines including tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). Barrow cites four circumstances which he contends support an equitable tolling of the 180–day time limit: (1) his participation in the internal union grievance; (2) his non-representation by counsel; (3) his ignorance of the filing requirements; and (4) his illiteracy.

This circuit considered, but rejected the employee's equitable tolling argument in *Blumberg v. HCA Management Co.*, 848 F.2d 642 (5th Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 781 (1989). In *Blumberg*, the plaintiff had consulted with attorneys during the 180–day period who informed her that she would have to file a charge. The *Blumberg* court noted three possible bases upon which to toll the statute of limitations: (1) pendency of a suit between the same parties in the wrong forum; (2) plaintiff's unawareness of the facts giving rise to the claim because of the defendant's intentional concealment of them; and (3) EEOC's misleading the plaintiff about the nature of her rights. *Id.* at 644. Barrow distinguishes *Blum-*

*berg* because an attorney did not represent him until after he received his right-to-sue letter from EEOC. While Barrow does not suggest that he fits within any of the three bases for equitable tolling outlined in *Blumberg*, he contends that these three bases are not exhaustive. *Id.*

None of the circumstances Barrow cites are bases for equitable tolling. First, the internal union grievance procedure is not a basis because the pendency of a grievance does not suspend the 180–day limitation for filing a charge. *Delaware State College v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 505, 66 L.Ed.2d 431 (1980).[2] Moreover, lack of knowledge of applicable filing deadlines is not a basis for tolling. *Larson v. American Wheel & Brake, Inc.*, 610 F.2d 506, 510 (8th Cir.1979). Neither is a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period. *James v. United States Postal Serv.*, 835 F.2d 1265, 1267 (8th Cir.1988). Finally, because "ignorance of legal rights does not toll a statute of limitations," *Larson*, 610 F.2d at 510, it is irrelevant whether that ignorance is due to illiteracy or another reason. Thus Barrow's illiteracy, if in the record,[3] is also not a basis for equitable tolling.

Therefore, because Barrow did not file his charge with the EEOC within 180 days of the adoption of a facially neutral seniority system and because no circumstances exist for the filing period to be equitably tolled, the district court did not err in dismissing with prejudice Barrow's ADEA claim based on the adoption and neutral application of the new seniority system.

---

**2.** The defendants further point out that Barrow admitted that he knew that the international union could not unilaterally change the seniority system as a result of the charges against the local union president. Barrow also admitted that because the seniority system was the result of collective bargaining, NOSSA would have to agree to any changes. We agree with the defendants' common-sense argument that because the resolution of the grievance procedure would not have modified the seniority system, Barrow may not use its pendency to toll his time for filing charges with the EEOC.

**3.** The parties dispute whether the record contains evidence of Barrow's illiteracy. Barrow asserts that his illiteracy is evident because the record shows that during his deposition his counsel had to read him documents. However, defendants' counsel contend that the documents were read to Barrow because Barrow did not have his glasses with him. Because illiteracy is not a sufficient basis for equitable tolling, we need not address this factual dispute over Barrow's illiteracy.

However, in his deposition, Barrow pointed to discriminatory practices in hiring unrelated to the seniority system. Although the CBA requires A-1's to be given opportunity for daily work before A-2's, Barrow alleged that A-2's are getting jobs that A-1's should be getting. He further stated that within the A-1 group, younger workers are preferred over older workers. However, these allegations were not included in Barrow's EEOC charge. In that charge, Barrow only cited age discrimination in the adoption of the new seniority system and in its neutral application. This is clear from the many references in Barrow's EEOC charges to February 4, 1988 (the date on which the CBA was signed). For example, in the EEOC charge against Local 3000, Barrow wrote, "On February 4, 1988, [NOSSA] President, C. David Burns (Age 55) and Local President, Irvin A. Joseph (Age 50) signed an agreement which changed the system of seniority referrals." In charges against both defendants, Barrow also wrote, "Since February 4, 1988 and continuing to present, I have been denied employment referrals." Finally, in the charge against Local 3000, Barrow wrote that the most recent date on which discrimination took place was "February 4, 1988 & Cont."

Furthermore, in its determination of no discrimination, the EEOC limited its investigation to the adoption and implementation of the new seniority system. Thus the EEOC did not address the alleged discriminatory application of that system. Because Barrow did not first present this issue to the EEOC, the district court had no jurisdiction to entertain his claim of discriminatory application of the facially neutral seniority system and properly dismissed that claim. However, the district court should have dismissed that claim without prejudice. Barrow should have the right to file a new EEOC charge within 180 days of any alleged discriminatory application of the facially neutral seniority system. On remand, the district court shall modify its dismissal of Barrow's ADEA claim based on alleged discriminatory application of the new seniority system to a dismissal without prejudice.

**B. The Retaliation Claim**

Barrow next argues that the district court erred in dismissing his claim of retaliation. Barrow stated in his deposition that the defendants retaliated against him for asserting his statutory rights to file a charge with the EEOC. He contends that the president of Local 3000 personally told him that he was being discriminated against because he was fighting the union.

Barrow did not file a retaliation charge with the EEOC before filing this suit.[4] The courts generally have no jurisdiction to hear claims of discrimination based on retaliation unless a charge is first filed with the EEOC. However, we have held that a district court has "ancillary jurisdiction" to hear a claim of retaliation, even though not filed with the EEOC, "when it grows out of an administrative charge that is *properly* before the court." *Gupta v. East Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. Unit A Aug. 1981) (emphasis added). Because one of the ADEA charges was untimely and the other was not presented first to the EEOC, they were not "properly" before the district court. Thus the retaliation charge has no charge on which to attach itself, and the district court correctly dismissed it. *See Ryman v. Office & Prof. Employees Int'l Union Local No. 66*, 628 F.Supp. 421, 429 (E.D.Tex. 1985) (citing *Gupta*).

However, like Barrow's ADEA claim based on discriminatory application of the facially neutral seniority system, Barrow's retaliation claim should not have been dismissed with prejudice. Barrow should have the right to file a charge with the EEOC within 180 days of any alleged acts of retaliation. On remand, the district court should modify its dismissal of Barrow's retaliation claim to a dismissal without prejudice.

4. After NOSSA filed its motion for summary judgment in the instant case, Barrow then filed a retaliation charge with the EEOC. This retaliation charge is not part of this suit.

## C. The Breach of Contract Claim

 Barrow next argues that the district court erred in dismissing his breach of contract claim. Barrow contends that the new seniority system violated the antidiscrimination clause of the CBA. Barrow argues that by adopting the new seniority system, NOSSA breached the CBA, and Local 3000 violated its duty of fair representation. *See* 29 U.S.C. § 185(a). However, like his ADEA claim based on the adoption of the new seniority system, Barrow's contractual claim based on the adoption of that system is also time barred. An employee must sue for breach of a CBA within six months of the accrual of his cause of action. *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983). The statute of limitations period began to run when Barrow discovered that the CBA was violated. *Barrett v. Ebasco Constructors, Inc.*, 868 F.2d 170, 171 (5th Cir.1989). Barrow admitted that in April 1988, he knew that the new seniority system would have a discriminatory effect on him. However, Barrow did not file suit until January 1990. Thus Barrow's claim for breach of contract based on the adoption of the new seniority system was untimely. The district court correctly dismissed that claim with prejudice.

However, Barrow also alleges breaches of the CBA unrelated to the seniority system. As explained above, Barrow testified that the facially neutral seniority system was discriminatorily applied in violation of the CBA antidiscrimination clause. Moreover, Barrow contends that the CBA requirement that all gang positions be filled (with A–1 workers getting the first opportunity of employment) was violated. He testified that despite his requests for a position, some gangs still have vacancies. In its minute entry, the district court did not specifically address these contentions. We will remand the case to give it an opportunity to do so.

## D. The Emotional Distress Claim

 Finally, Barrow argues that the district court erred in dismissing his pendent state law claim for infliction of emotional distress. Louisiana law provides a one-year prescriptive period for filing suit to recover for infliction of emotional distress. La.Civ.Code art. 3492. Finding that Barrow's claim for infliction of emotional distress "was filed over one year after the cause of action arose," the district court held that it was time barred and dismissed it with prejudice. If Barrow's only claim for infliction of emotional distress were predicated on the adoption of the seniority system, we would agree that his Louisiana tort suit would have prescribed. However, Barrow contended in his deposition that the defendants discriminatorily applied that system and frequently refused to hire him because of his age. Barrow also stated that many of these incidents occurred less than one year before he filed his suit. We therefore vacate the dismissal of Barrow's state law action as time barred and remand it to the district court for further proceedings.[5]

## IV.

In conclusion, we affirm the district court's dismissal with prejudice of Barrow's ADEA and contract claims based on the adoption and neutral application of the new seniority system. We further affirm the district court's dismissal of Barrow's ADEA claim based on the discriminatory application of the seniority system and Barrow's retaliation claim. However, on remand, the district court should change the dismissal of these two claims to without prejudice. Finally, we remand for further consideration Barrow's emotional distress claim and Barrow's breach of contract claim which are unrelated to the adoption and neutral application of the new seniority system.

Accordingly, the judgment of the district court is affirmed in part, vacated in part,

---

5. Barrow's emotional distress claim is a pendent state claim to Barrow's federal breach of contract claim. Thus if on remand the district court dismisses Barrow's contract claim, it would be within its discretion to dismiss Barrow's emotional distress claim as well.

and remanded for further proceedings in accordance with this opinion.

AFFIRMED IN PART, VACATED IN PART, and REMANDED.